Shannon L. Clark (019708)
Daniel Z. Kolomitz (034073)
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
602-530-8000
602-530-8500 – fax
slc@gknet.com
danny.kolomitz@gknet.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Peter H. Boyd, Jr., an individual,<br><br>Plaintiff,<br><br>v.<br><br>706-Ride Shuttle Co., an Arizona business entity; Tyler James Witt and Jane Doe Witt, husband and wife; Daniel Garcia and Jane Doe Garcia, husband and wife; Forest River, Inc., an Indiana corporation dba StarTrans Bus; Supreme Industries, Inc., a Delaware corporation; and Berkshire Hathaway, Inc., a Delaware corporation;<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>**(Tort; Motor Vehicle; Negligence; Manufacturing Defect, *Respondeat Superior*)**<br><br>**Jury Trial Demanded** |

Plaintiff, for his Complaint against Defendants, states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Peter H. Boyd, Jr. is an individual who resides in Santa Barbara County, California.

7336632v2/28347-0001

2. Defendant 706-Ride Shuttle Co. ("706-Ride") is an Arizona business entity doing business in La Paz and Mohave Counties, Arizona. On information and belief, Defendant 706-Ride is not officially organized or incorporated under the laws of Arizona.

3. On information and belief, Defendant Tyler Witt is the owner and operator of 706-Ride and doing business in the State of Arizona.  He is a resident of Mohave County, Arizona. On information and belief, Tyler Witt uses the fictitious name 706-Ride Shuttle Co., and does business under that name.

4. Defendant Jane Doe Witt is, upon information and belief, the spouse of Defendant Tyler Witt and a resident of Mohave County. Her true name is not yet known and this complaint will be amended upon its discovery.

5. Defendant Daniel Garcia was the driver of the van at the time of the incident.  He is a resident of Mohave County, Arizona.

6. Defendant Jane Doe Garcia is, upon information and belief, the spouse of Defendant Daniel Garcia and a resident of Mohave County. Her true name is not yet known and this complaint will be amended upon its discovery.

7. On information and belief, Defendant StarTrans Bus manufactured the 2002 bus which was involved in the incident that is the basis of this suit.  On information and belief, StarTrans Bus was a division of Defendant Supreme Industries Inc., a Delaware corporation, but was sold to Forest River, Inc. in approximately 2014.

8. Defendant Forest River, Inc. is an Indiana Corporation located in Elkhart County, Indiana. StarTrans Bus now operates as a division of Defendant Forest River. Defendant Forest River is authorized to do business in Arizona.

2

9. On information and belief, Defendant Forest River, Inc. is a wholly owned subsidiary of Defendant Berkshire Hathaway, Inc., a Delaware corporation located in Omaha, Nebraska.

10. All individual Defendants are husbands and wives and at all times material hereto were acting on behalf of their marital community as well as themselves. Each of the Defendants were the agents/or employees of the other Defendants and all actions by any of the Defendants were in the course and scope of their employment and/or agency with the other Defendants and were acting on their own behalf as well as on the behalf of all of the Defendants.

11. There is complete diversity between Plaintiff and Defendants and the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. Therefore, the Court has jurisdiction of this action pursuant to 28 U.S.C.§ 1332.

12. The alleged acts giving rise to this action occurred within the District of Arizona. For that reason, and also because some Defendants reside within the District of Arizona, venue is proper in this court pursuant to 28 U.S.C. § 1391.

**BACKGROUND**

13. On or before June 3, 2017, Defendant Star Trans was engaged in the business of designing, manufacturing, selling, and distributing small to medium sized shuttle buses.

14. On or before June 3, 2017, Defendant 706-Ride was in the business of renting out "party buses" for use by consumers, where 706-Ride would transport groups

of people to and from parties. 706-Ride used buses manufactured by Defendant StarTrans.

15. On the night of June 3 and into the morning of June 4, 2017, Plaintiff Peter Boyd was a passenger on a 706-Ride bus that was returning from a bar. Plaintiff Boyd was sitting next to an auxiliary loading door on the right, rear side of the bus.

16. On information and belief, this door once provided access for a wheelchair lift. However, the lift had been removed and replaced with a seat by an unknown person or entity.

17. Defendant Daniel Garcia, the driver of the bus, suddenly made a left hand turn and hit two bumps at speed.

18. Unbeknownst to Plaintiff Boyd, the auxiliary loading door on the right side of the bus was not properly latched, secured, or marked.

19. Plaintiff Boyd was forced to the right due to the speed of the left hand turn, leaning or falling into the unlatched door. The door opened from this small force, causing Plaintiff Boyd to fall into the road at speed.

20. Landing in the road, Plaintiff Boyd sustained catastrophic injuries from his fall.

21. At all times material to the matters alleged herein, Plaintiff Boyd exercised due care and was not negligent.

22. As a result of this incident, Plaintiff Boyd sustained physical and emotional injuries and general and special damages in an amount according to proof at trial.

## COUNT I
## Negligence
### (Defendant Daniel Garcia)

23. Plaintiff incorporates by reference all prior allegations of this Complaint.

24. Defendant Garcia, as driver of the bus and provider of Defendant 706-Ride's professional services, had a duty to ensure the safety of his passengers.

25. Upon information and belief, the rear, right side 706-Ride bus door was not latched or locked properly, allowing the door to open easily and with little provocation.

26. Seats in the subject 706-RIDE bus, including the seat of Plaintiff Peter Boyd, are positioned directly next to these doors. As such, the doors created an unreasonable risk for passengers on the bus.

27. Upon information and belief, Defendant Garcia did not check to make sure these dangerous doors were latched or secured before carrying his passengers on June 3rd and 4th, 2017.

28. Defendant Garcia continuously breached his duty to his passengers by allowing the bus to travel in such an unsafe condition.

29. Upon information and belief the bus was not equipped with any type of warning device that would have notified and alerted the driver that the door was not properly latched, and Defendant Garcia at no time warned his passengers of this danger.

30. Upon information and belief, Defendant Garcia drove too aggressively and recklessly considering the dangerous condition of his vehicle. As a result of this

recklessness, Plaintiff Peter Boyd was forced into the doors, which were left open by Defendant Garcia's negligence.

31. As a direct and proximate cause of the negligence of Defendant Garcia, Plaintiff sustained physical, emotional and other injuries, some of which may be permanent in nature, all to his general damage in a sum according to proof.

32. As a direct and proximate result of the negligence of Defendant Garcia, Plaintiff incurred, and will in the future incur, medical bills, related expenses, and other damages, and will continue to incur expenses in the future in an amount presently unknown.

33. As a direct and proximate result of the negligence of Defendant Garcia, Plaintiff lost, and will in the future suffer a loss of, wages and earning capacity.

## COUNT II
### Negligence
### (Defendants Tyler Witt and 706-Ride)

34. Plaintiff incorporates by reference all previous allegations as if alleged herein.

35. Defendants Witt and 706-Ride are liable for the acts and omissions of their employee, agent and driver, Defendant Garcia, under the doctrine of *respondeat superior* and the law of agency.

36. In addition, Defendants Witt and 706-Ride had a duty to exercise due care in the hiring, supervision, and retention of Defendant Garcia.

37. Defendants Witt and 706-Ride breached these duties by, among other things, hiring, retaining, and allowing Defendant Garcia to operate a bus/taxi containing numerous passengers.

38. Defendant Witt and 706-Ride also had a duty to provide a reasonably safe vehicle for the transport of passengers, and to warn of dangers associated with travel in it vehicles.

39. Defendants Witt and 706-Ride breached this duty, as the subject bus was in an unreasonably dangerous condition at the time of Plaintiff Boyd's injury, due to the dangerous condition of the unmarked, unlatched, and un-warned about rear doors.

40. As a direct and proximate result of Defendant Witt and 706-Ride's breach of these duties, Plaintiff sustained the injuries and damages described above.

## COUNT III
**Strict Product Liability – Manufacturing Defect**
**(Defendants StarTrans, Forest River, and**
**Berkshire Hathaway)**

41. Plaintiff incorporates by reference all previous allegations as if alleged herein.

42. The subject vehicle that caused Plaintiff Tyler Boyd's injury was a 2002 Ford E-350 12 passenger bus, production date 09/01, VIN#:1FDWE35F22HA08966. On information and belief, this bus was subsequently modified/manufactured by Supreme Industries, which owned the StarTrans Brand until 2014, when StarTrans was sold to Defendant Forest River, Inc., which is a wholly owned subsidiary of Defendant Berkshire

Hathaway. As such, the subject bus was sold and introduced into the stream of commerce by Defendants Supreme, StarTrans, Forest River, and Berkshire Hathaway (the "Manufacturing Defendants").

43. At all times herein, Manufacturing Defendants were in the business of designing, manufacturing and marketing small to medium sized shuttle buses designed to transport multiple passengers. Manufacturing Defendants are liable under the doctrine of strict products liability in tort for injuries produced by defects in the subject bus arising out of the design, manufacture and/or marketing of the bus.

44. Manufacturing Defendants sold the subject bus in a condition that was defective, unfit, and unreasonably dangerous for its intended and foreseeable use at the time it left the sellers. The bus was defective in design and manufacture, and defective due to inadequate warnings or instructions concerning its use and safe operation. As such, Manufacturing Defendants are strictly liable to Plaintiff in tort.

45. At the time of the incident, the subject bus was being used for its intended purpose in a manner foreseeable to Manufacturing Defendants.

46. Plaintiff was relying on the skill and judgment of the Manufacturing Defendants to ensure that the bus would be suitable for the purposes for which Plaintiff would be using it.

47. The subject bus contained an auxiliary door with a defective latching mechanism that was placed next to a seating area. The subject bus lacked a warning device that would alert the driver if the door was not properly latched. These were defects

in the design of the bus and were a direct and proximate cause of Plaintiff's damages in this case. These defects made the bus unreasonably dangerous to passengers.

48. It was economically, technologically, and practicably feasible at the time the van was designed, manufactured, sold, and/or placed into the stream of commerce to ensure that the van had an effective locking mechanism for its rear doors or a warning device that would alert the driver if the door was not properly latched.

49. The defects described above were not disclosed to potential purchasers of the bus and the bus was sold without warnings or instructions that could reasonably be expected to catch the attention of a reasonably prudent person. Manufacturing Defendants did not provide instructions and/or warnings comprehensible to the average user that would give a fair indication of the nature and extent of the danger of the doors and how to avoid that danger.

50. As a direct and proximate result of these defects in Manufacturing Defendants' product, Plaintiff suffered the injuries and damages alleged in this Complaint.

51. As a direct and proximate result of the Manufacturing Defendant's acts or omissions, Plaintiff sustained the injuries and damages described above.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury in this case.

# PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, and all of them, as follows:

A. For general damages and losses being incurred now and in the future in an amount reasonable and proper;

B. For past, present and future medical bills and related expenses;

C. For loss of wages;

D. For loss of earning capacity;

E. For all Plaintiff's costs incurred herein;

F. For pre- and post-judgment interest as allowed by law; and

G. For such other and further relief as this Court deems just and proper.

DATED this 28th day of May, 2019.

                                      GALLAGHER & KENNEDY, P.A.

                                      By */s/* Shannon L. Clark
                                          Shannon L. Clark
                                          Daniel Z. Kolomitz
                                          2575 East Camelback Road
                                          Phoenix, Arizona  85016
                                          *Attorneys for Plaintiff*

COPY of the foregoing mailed this
28th of May, 2019, to:

John Elardo, Esq.
Elardo, Bragg & Rossi
3001 East Camelback Road, Suite 130
Phoenix, AZ 85016

*/s/* Roberta L. Schmidt